IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Merle Miller,     Case No. 3:05CV7454

    Plaintiff,

v.     ORDER

Perry Corporation,

    Defendant.

This is a case alleging wrongful termination and tortious interference with the plaintiff's right to work and earn a living. Plaintiff Merle Miller sues his former employer, Perry Corporation [Perry], for allegedly discharging him on the basis of his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The plaintiff also alleges that the defendant refused to release the plaintiff from his contractual obligations arising from a non-compete agreement signed at the beginning of plaintiff's employment, thereby tortiously interfering with plaintiff's right to work in his trade.

Jurisdiction exists under 28 U.S.C.§ 1331 (2000), 28 U.S.C. § 1367 (2000), and 42 U.S.C. § 2000e-5 (2000).

Pending is Perry's motion for summary judgment. For the reasons that follow, the motion shall be granted.

## I. Background

Perry hired Miller on October 23, 2002, as a Corporate Sales Trainer. Miller began working on November 4, 2002. At the outset of his employment, Miller signed Perry's standard

employment agreement, which included a non-compete obligation effective for eighteen months after separation from the company. The non-compete agreement provided that a terminated employee may not compete with Perry in any of the counties in which Perry sells or services accounts. Further, the former employee may not use any list of current or potential customers on behalf of any Perry competitor.

Miller also received Perry's "Equal Employment Anti-Harassment" policy [the "anti-harassment policy"] as he started working for the company.

Approximately six months later, Perry promoted Miller to Marketing Manager at Perry's Lima, Ohio office. Miller continued to work for Perry until January 5, 2006, when Miller was terminated, according to Perry, for violating the anti-harassment policy.

Prior to his termination, Miller was accused of committing two acts in violation of the company's anti-harassment policy. Additionally, Miller was allegedly involved in two other episodes of sexual harassment, but these incidents were never formally reported.

On November 18, 2003, Miller's immediate boss, Barry Clark, overheard an inappropriate comment Miller made to his co-worker April Bowersock: "Maybe I should have hired all men up there." [Doc. 26 (Clark Dep. ¶ 57).] Clark informed Zimerle, Miller's supervisor, about the incident. On November 19, 2003, Zimerle issued a written warning to Miller. The warning read in part: "Should any of the above reoccur or any other inappropriate behaviors surface then Merle Miller understands that he is risking further disciplinary action up to and including dismissal." [Doc. 24 (Miller Dep. ¶ 42).] Bowersock did not report the incident because she felt the comment was made "in a joking manner."

In his deposition, Clark alleged that Miller engaged in an inappropriate conversation with former Perry employee Melinda Best. According to Clark, during Best's exit interview she related an incident where Miller met her after hours at a bar to discuss her work performance. Allegedly during this meeting Miller encouraged Best to reveal her sexual fantasies to him and said he could "help her out" at work if she described her body to him or showed him her breasts. [Doc. 24 (Miller Dep. ¶ 43).]

Miller acknowledges that he met Best at a bar, but denies that any sexual or otherwise inappropriate conversation took place. Clark counseled Miller about the alleged incident. Clark also told Miller that it was unwise to meet subordinates at a bar.

Clark also reported a complaint from manager Kim Strange. Strange alleged that Miller said during an employee training session that "women are not breadwinners" and they should "stay home in the kitchen." [Doc. 26 (Clark Dep. ¶ 61).] Miller denies ever making the comment and no further investigation or consultation took place.

On January 3, 2005, Amy Volbert, an employee under Miller's supervision, reported that Miller made an inappropriate sexual comment to her approximately one year earlier. Volbert contends that Miller was aware of her financial situation and asked her if she would "sleep with someone for one million dollars." [Doc. 26 (Clark Dep. ¶ 43-44)]. Volbert responded, "At this time I probably would." [Doc. 26 (Clark Dep. ¶ 44)]. In turn, Miller stated, "Now that we've got that straight, we'll have to negotiate a price." [Doc. 26 (Clark Dep. ¶44)].

After learning of this alleged incident, Clark and Taylor, Perry's controller, began investigating Volbert's allegation. After interviewing Miller and Volbert, Zimerle asked Miller to prepare a written report regarding the incident.

In his report, Miller denied that the alleged conversation ever took place. During her interview, Volbert claimed that she kept a diary in which she had written about the incident on the day it allegedly occurred. Volbert then retrieved her diary.

An entry in Ms. Volbert's diary dated January 13, 2004 read as follows: "My boss is stressing me… He asked if I would sleep with someone for a million dollars. I regretfully responded by saying yes, at this time I would. Now he probably thinks that I'm a slut!" [Doc. 22 (Taylor Aff., Ex. A).] In Taylor's deposition, she indicated that she believed the diary entry to be authentic.

On January 5, 2006, Clark terminated Miller, citing Miller's numerous violations of Perry's anti-harassment policy.

After Miller was terminated, he sought to be released from his non-compete obligations. Perry refused to do so.

On December 1, 2005, Miller filed suit against Perry, alleging wrongful termination and tortious interference with his right to earn a living due to Perry's refusal to release Miller from his non-compete commitment.

The non-compete agreement expired on June 30, 2006. Miller never sought to enjoin Perry from enforcing the provision while it was in effect. Perry contends that he did not breach the clause while it was in effect.

## II. Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the documents on file that it believes demonstrate the absence of a genuine issue of material fact. *Id*. The movant's burden is discharged when the movant points to an absence of evidence to support the nonmovant's case. *Id*.

Thereafter, the nonmovant must present evidence of the existence of a genuine issue of material fact. The nonmovant must rely on more than allegations of an existence of a material fact and present specific facts in support of his or her claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the record taken for a whole could not lead a rational trier of fact to find for the nonmovant, no genuine issue exists for trial, and the motion for summary judgment will be granted. *Id*.

### III. Discussion

### A. Title VII Claim

#### 1. Direct Evidence of Discrimination

In Ohio, discrimination claims are established through direct and indirect evidence of discrimination. *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St. 3d 125, 128 (1996). "[T]he plaintiff may establish a prima face case directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory animus." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St. 3d 578, 586-87 (1996).

Miller alleges only one instance of direct discrimination, an October 2004 comment he attributes to Clark: "If any male working for the company is accused of sexual harassment; he would be terminated." [Doc. 1 (EEOC 1)].

To determine whether the direct evidence introduced by a plaintiff suffices to carry a discrimination claim, the court must decide whether there is a causal connection between the discriminatory statement and the prohibited act of discrimination. Although Clark's statement arguably presupposes that a male employee would be the wrongdoer in a workplace discrimination claim, this isolated comment, made three months before Miller's termination, is, as a matter of law, insufficient to enable a rational trier of fact to find that Miller's gender played a role in his termination. *See, e.g., Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989) (explaining that an "isolated remark" is insufficient to support a finding of discrimination); *Byrnes*, 77 Ohio St. 3d at 130 (causal connection can be found only if the discriminatory comment is "closely tied in time or fact" to the termination of the employee).

Furthermore, Miller has not claimed that a causal connection exists between Clark's discriminatory comment and his termination. *See Stipkala v. Bank One*, 2005 WL 17880 (Ohio App.) (explaining that the plaintiff must conspicuously allege a "causal connection"). Since Miller does not assert a causal connection and such connection cannot be discerned logically, Miller has not offered sufficient direct evidence of discrimination to overcome defendant's summary judgment motion.

### 2. Indirect Evidence of Discrimination

If no direct evidence of discrimination is available, a plaintiff may provide evidence of indirect discrimination. *Byrnes*, 77 Ohio St. 3d at 128.

In *Barker v. Scovill*, 6 Ohio St. 3d 146 (1983), the Ohio Supreme Court adopted the analytical framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this standard, a plaintiff, to establish a *prima facie* of discrimination, must be: 1) a member of the protected class; 2) discharged; 3) qualified for the position; and 4) replaced by, or

his or her discharge must have permitted the retention of, a person who did not belong to the protected class. *Barker,* 6 Ohio St. 3d at 148.

In a reverse discrimination claim, however, a plaintiff must establish two additional elements: 1) background circumstances must support the suspicion that the defendant is that unusual employer who discriminates against the majority; and 2) the employer must have treated the plaintiff differently than it treated other similarly situated employees who were not members of the protected group. *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985).

In this case, Miller offers no evidence that Perry is the unusual employer that discriminates against the majority, or that similarly situated female employees were treated differently. Absent this evidence, Miller's reverse discrimination claim must fail.

Although Miller vigorously denies any inappropriate behavior, this is inconsequential, as the plaintiff must offer evidence to show discriminatory intent by Perry. Since Miller does not meet the first two prongs of the test, it is unnecessary to determine if he has satisfied the remaining criteria. Thus, Miller has not provided sufficient indirect evidence of discrimination to survive defendant's summary judgment motion.

Miller also contends that Volbert's sexual harassment claim was a pretext for his termination. However, a pretexual termination analysis is undertaken only *after* an employee establishes a *prima facie* case of discrimination and the employer offers a legitimate reason for termination. *Wagner v. Allied Steel & Tractor Co.,* 105 Ohio App. 3d 611 (1995). In this case, Miller has provided inadequate direct or indirect *prima facie* evidence of discrimination.

Therefore, Perry need not provide a legitimate reason for termination, and a pretexual termination analysis is unnecessary.[1]

### B. Tortious Interference/Non-Compete Claim

Miller contends that the non-compete provision in his employment agreement is void and unenforceable because, by enforcing the provision, Perry tortiously interfered with Miller's ability to work in his trade. Miller further requests compensatory damages for the period during which he was employed outside of his trade.

These contentions are both moot due to the expiration of the non-compete restriction by its own terms and Miller's failure to request an injunction when the provision was in effect.

### 1. Mootness

Judicial power to resolve a dispute is governed by Article III of the United States Constitution, which requires the judiciary to resolve only cases and controversies. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 470 (1982). The Supreme Court interprets this section as including only those "controversies in which the issues presented are still 'live' and the parties maintain a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). When the disputed issue cannot be redressed by a decision favorable to one party, the issue presented is no longer "live" and the

---

[1] I note, however, that Perry has offered a legitimate, nondiscriminatory explanation: namely, that Miller violated the company's anti-harassment policy. Though Miller claims that he did not make the comments attributed to him, that does not matter. What matters is that the company had a rational basis for believing the allegations; a court does not second-guess an employer's business judgment. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir.2004). Plaintiff's protestations of innocence are not, without more, enough to meet his burden of creating a genuine issue of material fact as to the *bona fides* of Perry's articulated – and legitimate – reason for firing him.

parties lack a legally cognizable interest in the outcome. *Id*. The issue then becomes moot, and the court lacks jurisdiction to resolve it. *Id*.

Miller's claim that the non-compete agreement he voluntarily signed at the beginning of his employment is void and unenforceable is moot because the provision has lapsed. The provision no longer restricts Miller's employment; any challenge to its validity is no longer "live." Thus, this claim must be dismissed as moot.

### 2. Compensatory Damages

Similarly, Miller's claim for damages under the non-compete agreement is also moot because he failed to request a remedy that might have alleviated his damages while the provision was still in effect. When Miller filed this suit, the non-compete restriction had about seven months to run. Miller could and should then have sought an injunction to prevent his employer from enforcing the provision. By failing to request an injunction, Miller unilaterally foreclosed his ability to seek work in his trade and thereby mitigate his compensatory damages.

One who allegedly suffers an injury due to a contractual obligation and requests compensation to remedy that injury is under a duty to mitigate damages that the party could have reasonably avoided without subjecting himself to undue risk, burden, expense or humiliation. *Wilson v. Kreutsch*, 111 Ohio App. 3d 47 (1996). Miller would not be precluded from recovering damages had he requested an injunction and had his request been denied. *See* Restatement (Second) of Contracts § 350 (1981). Because Miller did not seek injunctive relief to test the legality of the restriction, he cannot now request damages that he failed to try to lessen.

Compensatory damages operate to "make whole" a party injured as a proximate result of the actions of another. *S&D Mech. Contractors, Inc. v. Enting Water Conditioning Sys., Inc.*, 71

Ohio App. 3d 228, 239 (2005). Miller is not entitled to be "made whole" because he cannot show that he was injured as a proximate result of Perry's actions.

Perry's refusal to release Miller from Miller's contractual obligations under the non-compete agreement is not, in and of itself, unlawful, nor is it a breach of a contract or other free-standing wrong-doing for which Miller is entitled to be compensated. Miller cannot now show entitlement to compensation for lost job opportunities due to the non-compete agreement.[2]

### IV. Conclusion

It is therefore,

ORDERED THAT

Perry Corporation's motion for summary judgment be, and the same hereby is granted

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

---

[2] I note, moreover, that Miller does not show that he was offered, but declined – due to the existence of the non-compete restriction – other employment, Miller's acceptance of which would have arguably breached that provision. Aside from his failure to mitigate via a motion for injunctive relief, he has not shown that it is more likely than not that the non-compete provision played any role in his failure to obtain employment.

10